UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LARRY PUGH,

    Plaintiff,

v.   Case No. 5:20-cv-183-TKW/MJF

UNITED STATES OF AMERICA,

    Defendant.
_____/

# REPORT AND RECOMMENDATION

This civil action stems from Plaintiff's term of incarceration in a Bureau of Prisons ("BOP") facility in Mariana, Florida. He alleges that the BOP failed to treat his gastroesophageal reflux disease and refused to prescribe necessary medication, which forced Plaintiff to purchase this medication himself. Defendant has moved to dismiss this action for failure to state a claim upon which relief can be granted. (Doc. 14). Because Plaintiff has failed to state a claim upon which relief can be granted, the undersigned recommends that the District Court grant Defendant's motion to dismiss.[1]

---

[1] The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

# I. Background

Between at least 2010 and 2016, the BOP confined Plaintiff at the Federal Correctional Institution in Marianna, Florida ("FCI Marianna").[2] On May 4, 2010, the FCI Marianna Health Services Unit ("HSU") diagnosed Plaintiff with gastroesophageal reflux disease ("GERD") and prescribed Ranitidine 150 mg tablets twice daily for treatment of Plaintiff's symptoms. (Doc. 10 at 4 ¶ 1). This failed to alleviate Plaintiff's symptoms, and he continued to experience GERD symptoms for approximately three years.

Beginning on August 20, 2013, for approximately five days, Plaintiff experienced gastrointestinal bleeding. Plaintiff reported this to Health Services Administrator Pelt. (*Id.* at 4 ¶ 3, 16-17 ¶ 4). Mid-level Practitioner ("MLP") Eden Abad examined Plaintiff. (*Id.* at 17 ¶ 6). Based on the confirmed presence of fecal occult blood, Abad prescribed two 150-mg Ranitidine tablets twice daily and ordered a colonoscopy consult. (*Id.*). On December 12, 2013, medical personnel performed a colonoscopy on Plaintiff. (*Id.* at 5 ¶ 3). On February 28, 2014, MLP Diane Hassan informed Plaintiff that the colonoscopy was inconclusive as to the origin of the bleeding. (*Id.* at 17 ¶ 6).

On July 7, 2014, Chief Pharmacist Katie Watson rescinded Plaintiff's prescription for Ranitidine because Plaintiff's diagnosis did not meet "the BOP

---

[2] The parties do not specify the duration of Plaintiff's stay at FCI Marianna.

formulary over-the-counter prescribing matrix." (Doc. 10 at 6 ¶ 8). As a result, Plaintiff was required to self-treat his GERD by purchasing antacids and other medication, including Ranitidine, from the prison commissary.[3] Plaintiff alleges that his self-treatment resulted in a "marked and steady deterioration" in his symptoms. (*Id.* at 6 ¶ 9).

On June 1, 2015, Plaintiff's condition worsened despite the fact that he was taking the maximum dosage of Ranitidine as well as antacid tablets that he had purchased from the prison commissary. Plaintiff's treatment provider, nurse practitioner Melanie Alexander, examined Plaintiff and assessed his esophageal reflux as "Current, Chronic, Not Improved/Same." She declined to perform an Esophagogastroduodenoscopy ("EGD"), but on June 5, 2015, she prescribed antibiotics and Prilosec because Plaintiff tested positive for the bacterium Helicobacter pylori. (*Id.* at 6 ¶ 12). She also indicated that Pepto Bismol could be taken with the antibiotic and Prilosec, and she stated that Plaintiff could purchase the Pepto Bismol from the prison commissary. (*Id.* at 19 ¶ 10).

This treatment regimen temporarily alleviated Plaintiff's symptoms. After Plaintiff completed his fourteen-day treatment, however, his symptoms returned. In light of this, Alexander recommended that Plaintiff switch from Ranitidine to Prilosec. (*Id.* at 7 ¶ 13, 8 ¶ 17). She advised Plaintiff that he could purchase Prilosec

---

[3] Ranitidine is an ingredient in over-the-counter medications such as "Zantac."

from the prison commissary. Plaintiff does not state whether he ever purchased the Prilosec from the commissary and, if not, why he did not follow Alexander's recommendation that he purchase Prilosec from the commissary.

Between August and September 2015, Plaintiff tested positive and again was treated for Helicobacter pylori. Alexander again prescribed antibiotics, Prilosec, and Pepto Bismol. (*Id.* at 20 ¶ 13). Plaintiff's health improved, but the symptoms returned when Plaintiff resumed self-treatment with antacids and Ranitidine.

In October 2015, Plaintiff's symptoms worsened, and Alexander again prescribed treatment for Helicobacter pylori. This treatment, however, did not resolve the symptoms. (Doc. 10 at 9 ¶ 20). On October 27, 2015, Plaintiff reported to Dr. Kenedes Archer that he was still suffering from GERD. (*Id.*). On December 15, 2015, Alexander recommended Plaintiff for an EGD consult with a gastroenterologist, Dr. Jackson. (*Id.* at 10 ¶ 21).

On February 2, 2016, Dr. Jackson examined Plaintiff and recommended that he receive an EGD. Dr. Jackson also prescribed Plaintiff one 20-mg capsule of Prilosec.[4] (*Id.* at 10 ¶ 22). On February 9, 2016, Alexander again informed Plaintiff that he could purchase the Prilosec from the prison commissary. (*Id.*). Again, Plaintiff does not state whether he ever purchased the Prilosec from the commissary

---

[4] Throughout his complaint, Plaintiff uses both the brand name "Prilosec" and the generic name for the drug, "Omeprazole." The undersigned simply refers to both as "Prilosec."

and, if not, why he did not follow Alexander's recommendation that he purchase Prilosec from the commissary.

On June 8, 2016, Dr. Jackson performed the EGD. Dr. Jackson diagnosed Plaintiff with "moderate gastritis" and increased the prescription of Prilosec to 40 mg daily. Dr. Jackson also instructed Plaintiff to "continue his current diet" and Ranitidine regimen. (*Id.* at 21 ¶ 19).

On June 14, 2016, Alexander again informed Plaintiff that he would have to purchase Prilosec from the prison commissary. (Doc. 10 at 22 ¶ 19). Despite that, on June 23, 2016, Alexander informed Plaintiff she would submit the prescription for Prilosec to see if the pharmacy would fill it. (*Id.* at 22 ¶ 20). Later that day, Plaintiff retrieved from the pharmacy a 30-day supply of 20-mg capsules of Prilosec. (*Id.*). Plaintiff was to take only one 20-mg capsule of Prilosec daily. Plaintiff's symptoms were partially resolved, and he continued to take Ranitidine and antacid tablets. (*Id.*).

On August 18, 2016, Plaintiff requested that Alexander increase the dosage of Prilosec to one 20-mg capsule twice daily. (*Id.*). On September 13, 2016, Plaintiff began receiving the increased dosage that he had requested. (*Id.*). Plaintiff thereafter greatly improved.

On March 23, 2018, Plaintiff filed an administrative claim with the BOP's Southeast Regional Office to recoup the cost of the medication which he purchased from the prison commissary and to recover for his "injuries" and "pain and

suffering." (Doc. 10 at 2 ¶ 2(a)). On September 5, 2018, the BOP denied the claim. (*Id.* at 2 ¶ 2(b)). On November 13, 2018, Plaintiff filed a request for reconsideration. (*Id.* at 2 ¶ 2(c)). On January 8, 2020, the BOP denied this request. (*Id.* at 2 ¶ 2 (d)).

On July 6, 2020, Plaintiff commenced this lawsuit to recover $300,279.75 for his injuries, the cost of the medication he purchased, and compensation for pain and suffering. (*Id.* at 26). Plaintiff asserts a claim under the Federal Tort Claims Act, the Eighth Amendment of the United States Constitution, and the Freedom of Information Act. (Doc. 10 at 1 ¶ 1, 3-4 ¶ 1, 23-24 ¶¶ 22-23).[5]

## II. STANDARD

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In addressing a motion to dismiss, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[5] When a Plaintiff proceeds *pro se*, courts must construe his complaint liberally and must look beyond the labels that a *pro se* plaintiff uses to describe his claims. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The mere possibility that the defendant acted unlawfully is insufficient. *Id.* The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678.

A defendant may raise a statute of limitations defense in a motion to dismiss for failure to state a claim "when the complaint shows on its face that the limitation period has run." *Foster v. Savannah Comm'n*, 140 F. App'x 905, 907 (11th Cir. 2005) (quoting *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982)). If a plaintiff's allegations indicate "that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007). To dismiss a complaint as time-barred it must "appear beyond a doubt from the complaint itself that [the plaintiff] can prove no set of facts which would avoid a statute of limitations bar." *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001); *see Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003). "When the time-bar is apparent from the face of the complaint, the plaintiff bears the burden of pleading allegations sufficient to toll the statute of limitations." *Padilla v. Porsche Cars. N. Am., Inc.*, 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019).

## III. Discussion

A. <u>**Plaintiff's Claim of Medical Malpractice for Failure to Treat His GERD**</u>

Defendant argues that Plaintiff's medical malpractice claim under the FTCA is barred by the statute of limitations. (Doc. 14 at 6-8).

A tort claim under the FTCA is "barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." *Price v. United States*, 775 F.2d 1491, 1493 (11th Cir. 1985) (citing *Burgess v. United States*, 744 F.2d 771, 773 (11th Cir. 1984); 28 U.S.C. § 2401(b)). Generally, this two-year statute of limitations period begins to run when the plaintiff is injured. *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)). In medical malpractice cases, however, the statute of limitations begins to run when "the plaintiff knows that [his] injury is connected to some act of those who treated" him even if he does not know "the particular acts that resulted in [his] injury." *McCullough v. United States*, 607 F.3d 1355, 1359 (11th Cir. 2010) (citing *Price*, 775 F.2d at 1493-94).

Here, Plaintiff alleges that between 2014 and 2015, the BOP negligently prescribed Ranitidine and antacids to Plaintiff when it should have been prescribing Prilosec. (Doc. 10 at ¶ 17). It is clear from Plaintiff's complaint that he was aware of his GERD and gastritis symptoms—a persistent cough, aggravation of his asthma, constant sensation of burning in his stomach, indigestion, decreased appetite, and "sensations of food stacking up in his throat when eating [and] a feeling of having

overeaten when only eating a few bites of food," bloating, constipation, and other symptoms—as early as June 2015. (Doc. 10 at 7 ¶ 14, 9 ¶ 20).

As to Plaintiff's knowledge that Prilosec was the appropriate medication, Alexander prescribed Plaintiff Prilosec on two separate occasions between June 5, 2015, and September 2015. The Prilosec resolved Plaintiff's symptoms, and Plaintiff's symptoms returned when he did not take Prilosec. (Doc. 10 at 9 ¶19). On June 30, 2015, after the first successful treatment with Prilosec, Alexander recommended that Plaintiff take Prilosec. (*Id.* at 6-9 ¶¶ 13-17).[6] Additionally, on February 2, 2016, Dr. Jackson also recommended that Plaintiff take Prilosec to manage his symptoms. (*Id.* at 10 ¶ 22).

Based on these facts, by February 2, 2016, Plaintiff certainly knew the critical facts that he needed to pursue a medical malpractice claim. *See McCullough*, 607 F.3d at 1362; *Burgess*, 744 F.2d at 775; *Taylor v. United States*, No. 8:12-CV-518-T-33EAJ, 2013 WL 3153980, at *4 (M.D. Fla. June 19, 2013), *aff'd,* 554 F. App'x. 835 (11th Cir. 2014). Specifically, he knew that his GERD symptoms were substantially alleviated when he took Prilosec, and the BOP's alleged failure to prescribe Prilosec was the problem. Because Plaintiff had this knowledge at least by

---

[6] Plaintiff offers no explanation for his failure to follow Alexander's recommendation that he take Prilosec. Plaintiff does not allege that his failure to take Prilosec was the fault of Alexander or the BOP.

February 2, 2016, Plaintiff was required to file his administrative claim with the BOP by February 2, 2018. Plaintiff, however, waited until March 23, 2018, to submit his administrative claim to the BOP.[7] Because Plaintiff failed to file his administrative claim timely, an FTCA medical malpractice claim based on these facts is barred by the statute of limitations.

B.   **Plaintiff's Claim to Recover His Expenditures for Medication**

Plaintiff also alleges that the BOP committed a tort when it required Plaintiff to pay for over-the-counter medications such as Ranitidine, Prilosec, antacids, and Pepto Bismol.[8] Plaintiff alleges that he spent approximately $279.95 on these products. **(Doc. 10 at 14 ¶ 1).**

---

[7] Plaintiff also complains that the BOP negligently failed to diagnose and treat his gastrointestinal bleeding insofar as the BOP: (1) waited four months after he presented with his symptoms to schedule a colonoscopy; and (2) waited two months to inform him of the results of the colonoscopy. (Doc. 10 at 16-17 ¶¶ 4-6). These events, however, occurred in 2013 and 2014. Any claims arising from these events, therefore, are barred by the statute of limitations.

[8] To the extent Plaintiff also seeks to allege a constitutional tort claim for this conduct, such claim must be dismissed. "[A]s long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated . . . ." *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 245 (1983). Thus, generally, requiring an inmate to pay for medical care does not violate the Eighth Amendment. *Shapley v. Nevada Bd. of State Prison Comm'rs.*, 766 F.3d 404, 408 (9th Cir. 1985); *Morris v. Livingston*, 739 F.3d 740, 746-47 (5th Cir. 2014); *Tijerina v. Patterson*, 507 F. App'x 807, 810 (10th Cir. 2013); *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012); *Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999); *Reynolds v. Wagner*, 128 F.3d 166, 173-75 (3d Cir. 1997).

The Federal Tort Claims Act was "designed to provide redress for ordinary torts recognized by state law." *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004) (quoting *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001)). In an FTCA claim, the district court must apply the law of the state where the tortious act occurred. *Id.*; *see Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015); *Duque v. United States*, 216 F. App'x 830, 832 (11th Cir. 2007). Because the FTCA was designed to provide redress only for ordinary torts recognized by state law, "unless the facts support liability under state law, the district court lacks subject matter jurisdiction to decide an FTCA claim." *Ochran*, 273 F.3d at 1317 (quotations and citations omitted); *see Zelaya*, 781 F.3d at 1324 ("[T]he fact that a federal employee has failed to perform duties imposed by federal law is insufficient to render the federal government liable under the FTCA."). Because Plaintiff was incarcerated at FCI Mariana at the time of the alleged tortious conduct, Florida tort law is the applicable law.

Plaintiff has not directed undersigned's attention to any Florida statute or Florida case that imposes a duty on a government entity to provide free medication or authorizes a plaintiff to recover expenditures incurred for medication. *Cf. Morris*, 739 F.3d at 747 ("[T]here is no general constitutional right to free health care."). More specifically, Florida tort law has not created a cause of action for a prisoner to recover expenses for medicines that the prisoner purchased while he was

incarcerated. Florida law does not require physicians or nurses to provide over-the-counter medication free of charge, particularly when an individual has the ability to pay for such medication.

Because Florida tort law does not create a cause of action for such a claim, Plaintiff's claim for reimbursement of the costs he expended on over-the-counter medication also should be dismissed. *Zelaya*, 781 F.3d at 1324 ("[W]e have dismissed FTCA suits that have pleaded breaches of federal duties without identifying a valid state tort cause of action.").

C. **Plaintiff's Claim of Deliberate Indifference to a Serious Medical Need**

Plaintiff also attempts to state a claim of deliberate indifference to a serious medical need, in violation of the Eighth Amendment. (Doc. 10 at 3-4 ¶ 1). Specifically, he alleges that the BOP initially did not provide him with medical care for his gastrointestinal bleeding and Alexander refused to prescribe Plaintiff a special medical diet.[9]

Federal constitutional torts—such as an Eighth-Amendment claim of deliberate indifference to a serious medical need—are not cognizable under the FTCA. *FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994); *Shivers v. United States*, 1

---

[9] Dr. Jackson's prescribed treatment plan—which Plaintiff concedes was the proper treatment insofar as it resulted in nearly all of Plaintiff's symptoms subsiding—included the instruction that Plaintiff maintain his "current diet," which supports Alexander's decision not to prescribe a special diet for Plaintiff. (Doc. 10 at 21 ¶ 19).

F.4th 924, 928 (11th Cir. 2021); *McCollum v. Bolger*, 794 F.2d 602, 608 (11th Cir. 1986). The FTCA waives the United States' sovereign immunity for its employees' tortious conduct in limited circumstances. Namely, it waives sovereign immunity with respect to tortious conduct by federal employees that would give rise to liability under *state tort law*. *McCollum*, 794 F.2d at 608; *Denson v. United States*, 574 F.3d 1318, 1336 (11th Cir. 2009) ("[T]he FTCA is not a federal remedial scheme at all, but a waiver of sovereign immunity that permits an injured claimant to recover damages against the United States where a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.") (citation and quotation omitted); *see Zelaya*, 781 F.3d at 1324 ("[A] state tort cause of action is a *sine qua non* of FTCA jurisdiction."). "By definition, constitutional torts are not based on state law." *McCollum*, 794 F.2d at 608. Rather, constitutional tort claims such as an Eighth-Amendment deliberate indifference claim must be brought pursuant to *Bivens*. *Meyer*, 510 U.S. at 485; *Shivers*, 1 F.4th at 928.

Under *Bivens*, however, a Plaintiff's only remedy "lies against the individual" officers and does not extend to federal agencies or the United States. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Meyer*, 510 U.S. at 485. "*Bivens* authorizes suits against individual federal officials, not against the United States." *McCollum*, 794 F.2d at 608; *United States v. Timmons*, 672 F.2d 1373, 1380 (11th

Cir. 1982) (noting that the United States is immune from liability under *Bivens*). Here, Plaintiff has named only the United States as a Defendant. Accordingly, Plaintiff's Eighth Amendment claim—whether brought under the FTCA or *Bivens*— must be dismissed. *Meyer*, 510 U.S. at 478; *McCollum*, 794 F.2d at 608.

**D.   Plaintiff's Claim under The Freedom of Information Act**

Plaintiff also assert a claim under the Freedom of Information Act ("FOIA"). He states that he submitted a FOIA request to the BOP requesting a "Request for Consultation Form (SF-513)." (Doc. 10 at 23-24 ¶¶ 22-23). Plaintiff asserts that the BOP provided 72 pages of responsive materials but failed to provide the requested SF-513 Form.

"The FOIA is primarily an access and disclosure statute. It provides for wide-ranging citizen access to government documents and presumes them subject to disclosure absent a clear showing to the contrary." *Ely v. F.B.I.*, 781 F.2d 1487, 1489 (11th Cir. 1986) (internal citation omitted). Under the FOIA, an agency shall make records available to any person upon a request which "(i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). "A plaintiff may bring in federal court a private cause of action under the FOIA to enjoin a federal agency that has improperly withheld records." *Thompson v. Dep't of Navy, Headquarters, U.S. Marine Corps.*, 491 F. App'x 46, 48 (11th Cir. 2012) (citing 5

U.S.C. §552a(g)(1)). But a Plaintiff must exhaust all administrative remedies before seeking redress in federal courts. *Id.* (citing *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Plaintiff's complaint is devoid of allegations showing that Plaintiff properly exhausted his administrative remedies to pursue a claim under FOIA.

More importantly, FOIA does not authorize claims for damages. *Cornucopia Inst, v. U.S. Dep't of Agric.*, 560 F.3d 673, 675 n.1 (7th Cir. 2009); *Johnson v. City of Shorewood*, 360 F.3d 810, 816 (8th Cir. 2004). Here, Plaintiff seeks compensatory damages only. Thus, his claim under FOIA—to the extent he is attempting to assert one—is not cognizable and should be dismissed.

## IV. CONCLUSION

Because Plaintiff has failed to state a claim upon which relief can be granted, the undersigned respectfully **RECOMMENDS** that:

1. Defendant's motion to dismiss (Doc. 14) be **GRANTED**.

2. The clerk of the court close the case file.

At Pensacola, Florida this 19th day of July, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the**

**electronic docket is for the court's internal use only and does not control.** **An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** ***See*** **11th Cir. Rule 3-1; 28 U.S.C. § 636.**